**Richard R. Best**
**REGIONAL DIRECTOR**
**Lara S. Mehraban**
**Sheldon L. Pollock**
**David Stoelting**
**James E. Burt IV\***
**Attorneys for Plaintiff**
**U.S. SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
Phone:  (212) 336-0174 (Stoelting)
Email: stoeltingd@sec.gov
\*Not admitted in S.D.N.Y.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | 20-CV-_____ (   ) |
| -against- | **COMPLAINT** |
| **GLOBAL INVESTMENT STRATEGY UK LTD. and JOHN WILLIAM GUNN,** | |
| **Defendants.** | **Jury Trial Demanded** |

Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint against defendants Global Investment Strategy UK Ltd. ("GIS") and John William Gunn ("Gunn") (collectively, the "Defendants"), alleges as follows:

## SUMMARY OF ALLEGATIONS

1. A cornerstone of our system of broker-dealer regulation is the requirement that persons engaging in the business of effecting securities transactions for others be registered. GIS—a brokerage firm located in the United Kingdom that has never been registered as a broker

or dealer in the United States—violated this requirement.

2. From at least 2015 through 2019, GIS acted as a broker by effecting and inducing securities transactions in the United States for the accounts of others. The conduct that brought GIS within the statutory definition of a broker included providing clearance and settlement services for its U.S. customers, receiving transaction-based compensation, extending margin to its customers, holding customer funds and securities, and soliciting customers for its brokerage services. As a result, GIS was required to register with the Commission under Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Gunn aided and abetted GIS's violations.

3. Accordingly, GIS and Gunn should be enjoined from further violations of Section 15(a) of the Exchange Act and each should be ordered to pay a civil monetary penalty.

## **VIOLATIONS**

4. By virtue of the conduct alleged herein, GIS has engaged in acts, practices, transactions and courses of business that constitute violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

5. By virtue of the conduct alleged herein, Gunn is liable, pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), as an aider and abettor of GIS's violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

6. Unless the Defendants are permanently restrained and enjoined, they will again engage in the acts, practices, transactions, and courses of business set forth in this complaint and in acts, practices, transactions, and courses of business of similar type and object.

## JURISDICTION AND VENUE

7. The Commission brings this action pursuant to authority conferred by Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], seeking a final judgment: (1) restraining and permanently enjoining the Defendants from engaging in the acts, practices, transactions and courses of business alleged against them herein; and (b) imposing civil money penalties on the Defendants pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

8. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]. The Defendants, either directly or indirectly, have made use of the means or instrumentalities of interstate commerce, of the mails, the facilities of national securities exchanges, and/or the means or instruments of transportation or communication in interstate commerce in connection with the acts, practices, transactions and courses of business alleged herein.

9. Venue lies in the Southern District of New York pursuant to 28 U.S.C. §1391(b)(2) and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this complaint occurred within the Southern District of New York, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange. Specifically, several of GIS's account holders as well as the introducing broker-dealers ("IBDs") where they opened accounts were located within the Southern District of New York.

**DEFENDANTS**

10.     **GIS** is a financial services firm registered with and regulated by the Financial Conduct Authority of the United Kingdom, and is a member of the London Stock Exchange. Its principal place of business is in London, England. GIS has never been registered as, or associated with, a registered broker-dealer in the United States, and does not qualify for an exemption to the broker-dealer registration requirements.

11.     **Gunn**, age 50, is a citizen of the United Kingdom and resides in London, England. Gunn is the founder, chairman, compliance officer and principal of GIS, and he is not registered in the United States, or associated with any registered entity in the United States.

**FACTS**

I.     **GIS Acted as a Broker By Engaging in the Business Of Effecting and Inducing Securities Transactions for its U.S Customers**

12.     Through a wide range of conduct—including providing clearance and settlement services, extending margin to customers, holding customer cash and securities, receiving transaction-based compensation, and soliciting customers for its brokerage services—GIS acted as a broker and was required to be registered with the Commission under Section 15(a) of the Exchange Act.

13.     GIS's customers included approximately 40 U.S.-resident financial "backers," who opened omnibus accounts at GIS, and more than 600 U.S.-resident day traders, who had sub-accounts at GIS that were linked to a backer's omnibus account.

14.     The strategy of the backers and their day traders was to acquire allocations of securities issued by U.S. companies and governmental entities, among other issuers, using delivery-versus-payment ("DVP") accounts at U.S. introducing broker-dealers ("IBDs"). A

DVP account does not hold securities or cash; instead, the day traders instructed their IBDs to clear and settle their trades at GIS. The day traders sought to be "flat" at the end of every trading day through same-day, round trip transactions.

15. GIS maintained an omnibus account at a UK custodial firm which received the traders' securities electronically, and the trades settled in GIS's account at the UK custodial firm.

16. The value of securities that the U.S. customers cleared and settled through GIS was enormous. For example, the dollar value of trades cleared and settled through one of the 40 omnibus accounts ("Omnibus Account A") from 2016 through 2019 was $4 billion. Three other omnibus accounts during the same period cleared and settled through GIS a combined dollar value of trades of more than $40 billion.

17. GIS charged the U.S. backers and day traders commissions of approximately $34 to $55 per trade for clearing and settlement services, as well as fees for other brokerage services, such as curing failed trades.

18. The trading was highly profitable for GIS and for the U.S. account holders. From 2016 through 2019, GIS received more than $8.5 million in commission revenue from its U.S. customers, and Omnibus Account A generated more than $3.5 million in profits.

19. By clearing through GIS, a customer could purchase securities valued at 20 or 30 times the equity in an account, and on one occasion the margin reached 167:1. This degree of margin was significantly more than the backers or traders would have been permitted to trade through U.S.-registered broker-dealers, which are bound by rules limiting the amount a customer can initially borrow from a broker-dealer to purchase an equity security (generally 50% of the current market value of the margin equity security).

20. The increased leverage available through GIS was the reason that the omnibus

and sub-account holders chose to clear their trades through GIS, which charged higher per-trade fees than U.S. firms. The degree of leverage being extended by GIS created risk for the U.S.-based IBDs who could face losses if a sub-account holder abandoned a trade prior to settlement.

21. GIS required the backers to make a cash deposit when opening an omnibus account at GIS. GIS did not require the sub-account holders to maintain any specific cash balances or equity requirements.

22. GIS's website (www.gisukltd.com/) was accessible in the United States and solicited customers by promoting its "global multi-asset trade execution, clearing, safe custody and stock lending solutions to a combination of financial institutions, fund managers and wealth officers." GIS's website also stated that it provided "dedicated coverage to clients across both UK and US trading hours," and that the Internal Revenue Service listed GIS in its "directory of recognised FATCA Foreign Institutions."

    **II.**    **Gunn Substantially Assisted GIS's Violations**

23. As GIS's founder, chairman, compliance officer and principal, Gunn directed and was involved in all aspects of GIS's operations, including its brokerage activities for U.S. customers. Gunn has been involved, among other things, in onboarding new customers, opening and closing accounts, and resolving trading and leverage issues. Gunn also travelled to the United States, including to Manhattan, on a number of occasions to meet with GIS customers.

24. Gunn communicated with the backers and sub-account traders regarding opening and closing accounts at GIS.

25. Gunn also assisted the day traders in setting up the DVP accounts at the U.S. IBDs. For example, Gunn, as GIS's compliance officer, signed and sent numerous "comfort letters" to the IBDs, several of which were located in Manhattan. In these letters, Gunn stated

6

that "[GIS] acts on behalf of [the sub-account holder] as custody and settlement agent. . . . In our capacity as settlement agent for [the sub-account holder] . . . GIS will honour transactions which [the sub-account holder] have confirmed through our agreed trade clearing process[.]"

26. On at least one occasion, Gunn used GIS's capital to address a margin call in a backer's omnibus account at GIS, and sold securities from a backer's account for the same purpose.

## FIRST CLAIM FOR RELIEF
### Violations of Section 15(a) of the Exchange Act
### (against Defendant GIS)

27. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 26 as if fully set forth herein.

28. Defendant GIS acted as a broker within the meaning of Section 3(a)(4) of the Exchange Act, 15 U.S.C. § 78c(4), and made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) without being registered with the Commission in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

29. By reason of the foregoing, defendant GIS violated, and unless enjoined will continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## SECOND CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 15(a) of the Exchange Act
### (Against Defendant Gunn)

30. The allegations contained in paragraphs 1 through 26 above, are repeated and realleged as if fully set forth herein.

31. Defendant Gunn knowingly provided substantial assistance to the violations of

Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), by defendant GIS.

32. By reason of the foregoing, defendant Gunn aided and abetted violations of, and unless enjoined, will continue to aid and abet violations of, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a Final Judgment:

**I.**

Permanently enjoining the Defendants from committing, aiding and abetting or otherwise engaging in conduct that would make them liable for the violations of the federal securities laws alleged in this complaint.

**II.**

Ordering the Defendants to pay civil monetary penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

**III.**

Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: New York, New York
December 22, 2020

Respectfully submitted,

By: s/ *Richard R. Best*
Richard R. Best
Lara S. Mehraban
Sheldon L. Pollock
David Stoelting
James E. Burt IV*
*Attorneys for Plaintiff*
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
Tel: (212) 336-0174 (Stoelting)
Email: stoeltingd@sec.gov
*Not admitted in S.D.N.Y.