UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

- against -

GLOBAL INVESTMENT STRATEGY UK LTD.,

and

JOHN WILLIAM GUNN

Defendants.

Case No. 20-cv-10838 (AKH)

---

**MEMORANDUM OF LAW IN SUPPORT OF
GLOBAL INVESTMENT STRATEGY UK LTD. AND JOHN WILLIAM GUNN'S
<u>MOTION TO DISMISS THE COMPLAINT</u>**

**DLA PIPER LLP (US)**
Caryn Schechtman
Thomas Alford
Joshua Kane
1251 Avenue of the Americas
New York, New York 10020
Phone: (212) 335-4500
caryn.schechtman@us.dlapiper.com
thomas.alford@us.dlapiper.com
joshua.kane@us.dlapiper.com

*Counsel for Defendants*
*Global Investment Strategy U.K. Ltd. and*
*John William Gunn*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ......................................................................................................3

    A.    The SEC's Allegations.................................................................................3

    B.    Mr. Gunn..................................................................................................5

    C.    The SEC's Attempts to Serve the Complaint. ...........................................6

ARGUMENT ...........................................................................................................6

    I.    MR. GUNN WAS NOT PROPERLY SERVED......................................6

        A.    Legal Standard. ..............................................................................6

        B.    Mr. Gunn is a Hong Kong Resident, and the SEC Made No Attempt to Serve Him There.............................................................7

    II.    THE COURT LACKS PERSONAL JURISDICTION OVER MR. GUNN...........9

        A.    Legal Standard. ..............................................................................9

        B.    Mr. Gunn Lacks Minimum Contacts with the Forum. .............................11

    III.    THE COMPLAINT FAILS TO STATE CLAIMS FOR RELIEF. .......................13

        A.    Legal Standard. ..............................................................................13

        B.    Providing Credit or Margin Is Not a Broker-Dealer Activity and Cannot Serve as a Basis for a Violation of Section 15(a). ....................................14

        C.    The SEC Fails to Allege the Necessary Domestic Nexus for the Transactions at Issue. ....................................................................16

        D.    The SEC Failed to Plead the Requisite Scienter to Establish Liability for Mr. Gunn under Section 20(e) of the Exchange Act. ...............................23

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012)..............................................................................19, 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................13, 14, 24

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014)...............................................................................18, 21

*Consol. Gold Fields PLC v. Minorco, S.A.*,
   871 F.2d 252 (2d Cir. 1989)........................................................................................17

*Cornwell v. Credit Suisse Grp.*,
   729 F. Supp. 2d 620 (S.D.N.Y. 2010)..........................................................................17, 23

*Duravest, Inc. v. Viscardi, A.G.*,
   581 F. Supp. 2d 628 (S.D.N.Y. 2008)................................................................................13

*E.ON AG v. Acciona, S.A.*,
   468 F. Supp. 2d 559 (S.D.N.Y. 2007)................................................................................17

*Evriholder Products LLC v. Simply LBS Ltd.*,
   No. 17 Civ. 4329 (RA), 2020 WL 7060336 (S.D.N.Y. Apr. 21, 2020)....................................7

*Galper v. JP Morgan Chase Bank, N.A.*,
   802 F.3d 437 (2d Cir. 2015).......................................................................................13

*George v. Prof'l Disposables Int'l, Inc.*,
   221 F. Supp. 3d 428 (S.D.N.Y. 2016)..................................................................................6

*Goldman v. Belden*,
   754 F.2d 1059 (2d Cir. 1985).....................................................................................13

*Henry Haining Zhang v. Kon Ki Lo*,
   No. 14 Civ. 6945 (CM), 2020 WL 2133163 (S.D.N.Y. May 5, 2020)....................................13

*In re Alstom SA*,
   406 F. Supp. 2d 346 (S.D.N.Y. 2005)................................................................................10

*In re BRF S.A. Securities Litigation*,
   No. 18 Civ. 2213 (PKC), 2019 WL 257971 (S.D.N.Y. Jan. 18, 2019) ....................................8

*In re Kemprowski & the Cambridge Consulting Co.*,
    Exchange Act Release No. 34-35058, 1994 WL 684628 (Dec. 8, 1994) ...............................22

*In re Petrobras Sec. Litig.*,
    862 F.3d 250 (2d Cir. 2017)......................................................................................16, 18, 19

*ITT v. Cornfeld*,
    619 F.2d 909 (2d Cir. 1980).......................................................................................17

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011)...................................................................................................10

*Krepps v. Reiner*,
    588 F. Supp. 2d 471 (S.D.N.Y. 2008).......................................................................9

*Leonard F. v. Isr. Disc. Bank of N.Y.*,
    199 F.3d 99 (2d Cir. 1999).........................................................................................14

*Loginovskaya v. Batratchenko*,
    936 F. Supp. 2d 357 (S.D.N.Y. 2013), *aff'd*, 764 F.3d 266 (2d Cir. 2014) ...........................20

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010).................................................................................... *passim*

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987).....................................................................................................6

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*,
    753 F. Supp. 2d 166 (S.D.N.Y. 2010)....................................................................14, 19

*Ponce v. SEC*,
    345 F.3d 722 (9th Cir. 2003) .....................................................................................23

*Reynolds Corp. v. Nat'l Operator Servs., Inc.*,
    73 F. Supp. 2d 299 (W.D.N.Y. 1999) .......................................................................12

*Sara Designs, Inc. v. A Classic Time Watch Co.*,
    234 F. Supp. 3d 548 (S.D.N.Y. 2017)........................................................................24

*SEC v. Alexander*,
    160 F. Supp. 2d 642 (S.D.N.Y. 2001)........................................................................12

*SEC v. Battoo*,
    158 F. Supp. 3d 676 (N.D. Ill. 2016) .......................................................................17

*SEC v. Benger*,
    934 F. Supp. 2d 1008 (N.D. Ill. 2013) ...............................................................2, 17, 18, 22

*SEC v. DiBella*,
   587 F.3d 553 (2d Cir. 2009)........................................................................23

*SEC v. DiMaria*,
   207 F. Supp. 3d 343 (S.D.N.Y. 2016)..........................................................24

*SEC v. Espuelas*,
   579 F. Supp. 2d 461 (S.D.N.Y. 2008)..........................................................23

*SEC v. Goldman Sachs & Co.*,
   790 F. Supp. 2d 147 (S.D.N.Y. 2011)..........................................................17

*SEC v. Hansen*,
   No. 83 Civ. 3692, 1984 WL 2413 (S.D.N.Y. Apr. 6, 1984)..........................22

*SEC v. Lucent Techs., Inc.*,
   610 F. Supp. 2d 342 (D.N.J. 2009)...............................................................23

*SEC v. Martino*,
   255 F. Supp. 2d 268 (S.D.N.Y. 2003)..........................................................23

*SEC v. PlexCorps*,
   No. 17 Civ. 7007 (CBA) (RML), 2018 WL 4299983 (E.D.N.Y. Aug. 8, 2018).....................9

*SEC v. Scoville*,
   913 F.3d 1204 (10th Cir. 2019) ...................................................................16

*SEC v. Sharef*,
   924 F. Supp. 2d 539 (S.D.N.Y. 2013)........................................................9, 10

*SEC v. Tourre*,
   No. 10 Civ. 3229 (KBF), 2013 WL 2407171 (S.D.N.Y. June 4, 2013) ................16

*Shaffer v. Heitner*,
   433 U.S. 186 (1977)......................................................................................12

*TAGC Mgmt., LLC v. Lehman*,
   842 F. Supp. 2d 575 (S.D.N.Y. 2012).............................................................8

*Walden v. Fiore*,
   571 U.S. 277 (2014)................................................................................10, 11

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)......................................................................................10

## Statutes & Other Authorities

12 C.F.R. § 221.1 ......................................................................................15

17 C.F.R. § 240.15a-6 ...............................................................................22

15 U.S.C. § 78aa .................................................................................9, 16

15 U.S.C. § 78aa(b) ..................................................................................16

15 U.S.C. § 78c(a)(4) ..................................................................................5

15 U.S.C. § 78g ........................................................................................15

15 U.S.C. § 78o(a) ................................................................................4, 24

15 U.S.C. § 78o(b) ......................................................................................5

15 U.S.C. § 78t(e) .....................................................................................24

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-
    203, § 929P(b), 124 Stat. 1376, 1864-65 (2010) ...................................16

Fed. R. Civ. P. 4(f)(2)(C)(ii) ...............................................................6, 7, 8

Fed. R. Civ. P. 6.9 ......................................................................................7

Fed. R. Civ. P. 12(b)(2) ......................................................................1, 9, 13

Fed. R. Civ. P. 12(b)(5) ......................................................................1, 6, 9

Fed. R. Civ. P. 12(b)(6).....................................................................1, 13, 16

Fed. R. Civ. P. 15a-6 .................................................................................22

*Symposium: Revolution in the Regulation of Finance Advice: The U.S., the U.K.*
    *and Australia: International Issues in the Regulation of Financial Advice:*
    *Regulation of Global Financial Firms After Morrison v. National Australia*
    *Bank,*
    87 St. John's L. Rev. 561, 582 (2013) ...................................................22

Defendants Global Investment Strategy U.K. Ltd. ("GIS") and John William Gunn ("Mr. Gunn"), by and through their undersigned attorneys and pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6), hereby move the Court for an Order dismissing Plaintiff Securities and Exchange Commission's ("SEC") Complaint for lack of personal jurisdiction and insufficient service of process as to Mr. Gunn, and failure to state claims upon which relief can be granted as to both Mr. Gunn and GIS.

## PRELIMINARY STATEMENT

GIS, a non-U.S. domiciled financial services company, operates its business exclusively in the U.K. and primarily serves non-U.S. customers. GIS did not handle U.S. customer orders for securities, did not route U.S. customer orders, and did not execute any order for a U.S. security, either as an agent or principal. Nor did GIS negotiate the terms of any security trades on U.S. markets, or possess authority over the U.S. activities of its account holders. And though GIS maintains a run-of-the mill website, accessible throughout the world, which describes its non-U.S. market broker and financing services, it did not solicit any U.S. customers. Nevertheless, the SEC has brought suit, alleging that, between 2015 and 2019, GIS acted as an unlicensed broker by "effecting and inducing securities transactions in the United States for the accounts of others." (Compl., ¶ 2.) On top of that, the SEC singles out GIS's founder, Mr. Gunn, and alleges he aided and abetted GIS's unlicensed broker activities. (*Id.*)

In its Complaint, the SEC alleges that the reason why U.S. customers had accounts with GIS was so that they could obtain higher levels of leverage to finance securities transactions. As a threshold matter, the extension of credit and corresponding holding of collateral in connection with the purchase or sale of securities is not considered effecting or inducing a securities transaction and, therefore, cannot serve as a basis for the violations alleged here. Indeed, it is well established that parties other than broker-dealers can provide these same services. But even

1

if these financing services did constitute effecting or inducing a securities transaction, the SEC seemingly ignores two key questions: (i) Does Section 15 of the Securities and Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78o, apply extraterritorially?; and (ii) if so, what are the limits of its application in light of the Supreme Court's decision in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)? While these are questions of first impression in the Second Circuit, the only court to address this issue held that a broker's failure to register under Section 15(a) of the Act is not actionable in those cases where the intended transaction was foreign and thus outside of the Act. *See SEC v. Benger*, 934 F. Supp. 2d 1008, 1013 (N.D. Ill. 2013).

In its overreaching attempt to regulate GIS's activities here, the SEC incorrectly alleges that the Exchange Act applies extraterritorially in all cases where the "means or instrumentalities of transportation or communication in interstate commerce" have been utilized. (Compl., ¶ 9.) But, according to the Supreme Court in *Morrison*, the SEC's application of the law is erroneous since the Act, except in a few limited circumstances, does not apply extraterritorially and the mere reference to interstate commerce does not defeat the presumption against extraterritoriality. In light of *Morrison*, the SEC's Complaint thus insufficiently alleges that either GIS or Mr. Gunn effected or induced any U.S. transaction. The SEC simply fails to articulate how GIS's financing and margin services—which took place exclusively in the U.K., in a U.K. custodial account—constituted a securities transaction at all, much less one on a U.S. stock exchange or involved the passing of title of a security in the U.S. Without alleging a sufficient domestic nexus, the SEC's Complaint against both Mr. Gunn and GIS thus fails to state a claim for relief.

What's more, the SEC neglected to set forth a plausible basis for relief against Mr. Gunn. An aiding and abetting claim requires that the SEC provide the court with at least *some* factual basis expressing Mr. Gunn's actual knowledge that GIS was violating Section 15(a) of the

Exchange Act. Yet, other than a talismanic incantation that Mr. Gunn "knowingly provided substantial assistance to violations of Section 15(a)," (*see* Compl., ¶ 31), the SEC's Complaint is devoid of even a hint of Mr. Gunn's actual knowledge of any violation on GIS's behalf. Therefore, absent a plausible allegation that Mr. Gunn possessed the necessary scienter required to sustain an aiding and abetting claim, the Complaint against Mr. Gunn should also be dismissed.

Additionally, in light of the fact that Mr. Gunn is not domiciled in the U.S., does not have real property or bank accounts in the U.S., and does not engage in transactions in the U.S., this Court lacks personal jurisdiction over Mr. Gunn. Moreover, the SEC failed to properly serve Mr. Gunn, a Hong Kong resident, with the summons and Complaint.

Accordingly, this Court lacks jurisdiction over Mr. Gunn, and the SEC has failed to state claims upon which relief can be granted. This Court should, therefore, dismiss the SEC's Complaint with prejudice.

## BACKGROUND

### A. THE SEC'S ALLEGATIONS.[1]

GIS is a London-based financial services firm. (Compl., ¶ 10.) It is a member of the London Stock Exchange and is registered with and regulated by the Financial Conduct Authority ("FCA") of the U.K. (Compl., ¶ 10.) Mr. Gunn is the founder, compliance officer, and chairman of GIS. (Compl., ¶ 11.)

The SEC alleges that from 2015 through 2019, GIS performed securities transactions and related services for customers based in the U.S. (Compl., ¶ 2.) According to the SEC, approximately 40 financial "backers" who resided in the U.S. held omnibus accounts at GIS, and

---

[1] The allegations in the complaint are described here only to demonstrate that they do not state a claim as a matter of law. Nothing in this memorandum should be taken as an admission that any allegation in the Complaint is true.

these accounts were linked to sub-accounts held by day traders who also resided in the U.S. (*Id.* ¶ 13.) The traders also held delivery-versus-payment accounts with introducing broker-dealers ("IBDs") based in the U.S. and would direct the IBDs to clear and settle trades at GIS. (*Id.* ¶ 14.) The Complaint alleges that these trades would settle in an account held by GIS at a custodial firm in the U.K. (*Id.* ¶ 15.)

GIS allegedly earned per-trade fees from its customers for these alleged clearing and settlement services. (*Id.* ¶¶ 17-18.) The SEC also alleges that while these fees were higher than those charged by U.S.-registered firms, GIS offered its customers more leverage than what U.S.-registered broker-dealers were able to offer, incentivizing customers to "clear" their trades through GIS. (*Id.* ¶¶ 19-20.) Additionally, the SEC alleges that GIS solicited business from U.S.-based customers through a website that was accessible throughout the world, including in the U.S. (*Id.* ¶ 22.)

According to the SEC, Mr. Gunn met with certain of GIS's customers in Manhattan, though the SEC does not describe the content of these alleged meetings or how often they occurred. (*Id.* ¶ 23.) The SEC also alleges that Mr. Gunn generally communicated with certain GIS customers about opening or closing accounts. (*Id.* ¶ 24.) And the SEC alleges that Mr. Gunn, in his capacity as GIS's compliance officer, issued "comfort letters" to IBDs on behalf of GIS, assuring them that GIS would honor transactions made on behalf of the sub-account holders. (*Id.* ¶ 25.) Finally, the SEC alleges that on one occasion, Mr. Gunn used GIS's capital to address a margin call in the account of one of the backers. (*Id.* ¶ 26.)

Based on these allegations, the SEC filed a Complaint against GIS and Mr. Gunn on December 22, 2020, asserting one count against GIS for violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), and one count against Mr. Gunn for aiding and abetting GIS's

alleged violations. (Compl., ¶¶ 27-32.) The SEC argues that by providing the alleged services described above, GIS acted as a broker within the meaning of Section 3(a)(4) of the Exchange Act, 15 U.S.C. § 78c(a)(4). (Compl., ¶ 28.) And because GIS is not registered as a broker with the SEC in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b), the SEC claims GIS's alleged brokerage services violated Section 15(a). (Compl., ¶ 29.) The SEC also claims Mr. Gunn aided and abetted GIS's alleged violations of Section 15(a) through the work he allegedly performed for GIS's customers. (Compl., ¶¶ 30-32.)

**B.    MR. GUNN.**

GIS was founded in 2004. (Gunn Decl., ¶ 5.) The firm is incorporated in England and Wales, and maintains its principal place of business in London, England. (*Id.* ¶ 4.) In addition to being FCA regulated,[2] GIS is a London Stock Exchange Member Firm. (*Id*. ¶ 6.) GIS's chief executives, financial and accounting departments, legal department, and other executive and control functions, as well as its employees are based out of London, England. (*Id.* ¶ 8.) Mr. Gunn, however, is a U.K. non-resident citizen who resides and works primarily in Hong Kong and is employed by Global Investment Strategy H.K. Ltd. (*Id.* ¶¶ 9, 10.) Neither GIS nor Mr. Gunn are registered to do business in the U.S. (*Id.* ¶ 12.) Nor do they have an office, place of business, telephone listing, or bank account in the U.S. (*Id*. ¶¶ 12-15.) Furthermore, GIS and Mr. Gunn do not have any interest in or use or possess any real property in the U.S., nor do they have agents appointed for service anywhere in the U.S. (*Id.* ¶¶ 16, 17.) Importantly, GIS and Mr. Gunn do not trade securities on behalf of clients in the U.S. and, other than maintaining a website, neither Mr. Gunn nor GIS advertise services in the U.S. (*Id.* ¶¶ 18, 19.)

---

[2] "GIS has never been registered as, or associated with, a registered broker-dealer in the United States …" (Compl., ¶ 10.)

## C. THE SEC'S ATTEMPTS TO SERVE THE COMPLAINT.

On December 29, 2020, the SEC attempted to serve GIS and Mr. Gunn by asking the Clerk of the Court to mail the summons, Complaint, ECF Rules, and this Court's individual practices to an address in London that the SEC alleges is the business address of both GIS and Mr. Gunn. (Affidavit of Service, ¶ 12, Ex. 5.) In its affidavit of service, the SEC alleges that, on December 30, 2020, both Mr. Gunn and GIS were served "pursuant to [Fed. R. Civ. P.] 4(f)(2)(C)(ii) via Federal Express." (*Id.* ¶ 13, Ex. 6.) Federal Express's proof of delivery, however, states that the Clerk's package was delivered to the "Receptionist/Front Desk," and being signed for by "J.JOHN"[3] and "A.ANGELA," respectively. (Affidavit of Service, Ex. 7.)

## ARGUMENT

The Complaint should be dismissed in this case because Mr. Gunn was not properly served with the Complaint, this Court lacks personal jurisdiction over Mr. Gunn, and the SEC has failed to state claims against both GIS and Mr. Gunn upon which relief can be granted.

## I. MR. GUNN WAS NOT PROPERLY SERVED.

### A. Legal Standard.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of [process] must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Under Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss a complaint based on inadequate service of process. *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016). "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *Id.* (citations omitted).

---

[3] Although Mr. Gunn's first name is John, he is not the "John" referenced in the Affidavit of Service. (Gunn Decl., ¶ 20.)

**B.     Mr. Gunn is a Hong Kong Resident, and the SEC Made No Attempt to Serve Him There.**

The SEC has not demonstrated and cannot demonstrate adequate service of the summons or Complaint on Mr. Gunn.  Accordingly, this Court lacks jurisdiction over Mr. Gunn.  Federal Rule 4(f)(2)(C)(ii), on which the SEC relies to establish service on Mr. Gunn, provides for service on individuals abroad by mail sent by the court clerk "unless prohibited by the foreign country's law."  Fed. R. Civ. P. 4(f)(2)(C)(ii).  Here, the SEC asked the Southern District of New York Clerk's Office to mail the summons and Complaint to Mr. Gunn at the London office address of GIS, which is provided on GIS's website.  (Affidavit of Service, ¶ 11.)  According to the SEC, that office is Mr. Gunn's "business address."  (*Id.*)

As an initial matter, service on Mr. Gunn was improper under Rule 4(f)(2)(C)(ii) because "the foreign country's law," *i.e.*, the law of the U.K., does not contemplate service on an individual by mail to that person's place of business.  Under Rule 6.9 of the English Civil Procedure Rules, the place of service on an individual is that individual's "usual or last known residence."[4]  Mr. Gunn's residence is in Hong Kong, (Gunn Decl., ¶ 3), and the SEC does not claim to have served him there.  (*See generally* Affidavit of Service.)

Moreover, the SEC's general proposition that Rule 4(f)(2)(C)(ii) authorizes service by mail to an individual's place of business (Affidavit of Service, ¶ 10), as opposed to that person's residence or domicile, is unsupported by any of the authorities cited by the SEC.  In each of the cases the SEC cites, service was attempted on a corporate defendant and not on an individual.[5]

---

[4] www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.9

[5] The SEC describes the court in *Evriholder Products LLC v. Simply LBS Ltd.* as approving service via mail "to [the] business address of company and employees in Hong Kong" (Affidavit of Service, ¶ 10), but the court there did not make any finding with respect to service on the employee defendants, who had been voluntarily dismissed from the case.  *Evriholder Products LLC v. Simply LBS Ltd.*, No. 17 Civ. 4329 (RA) (BCM), 2020 WL 7060336, *2 n. 1 (S.D.N.Y. Apr. 21, 2020).

And, even if Rule 4(f)(2)(C)(ii) and English law authorized service on Mr. Gunn by mail to his place of business in principle, the SEC has not established that the address of GIS provided on the company's website is Mr. Gunn's actual place of business.  The bases for this assertion are (i) a printout of the company's webpage showing its address (Affidavit of Service, ¶ 11, Ex. 2); (ii) letters signed by Mr. Gunn with company letterhead, the most recent of which is six years old (*id.*, Ex. 3); and (iii) a few emails from Mr. Gunn from three years ago in which GIS's address appears in his signature block.  (*Id.*, Ex. 4.)  The printout of GIS's webpage is insufficient to establish that GIS's address is Mr. Gunn's place of business.  *TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 583 (S.D.N.Y. 2012) ("A webpage from the [company's] website containing the New York office's contact information in no way indicates that individual defendants have held out [the company's address] as their actual place of business, and any conclusory statement to the contrary on plaintiffs' part is not enough to overcome individual defendants' sworn affidavits stating that their actual place of business is in Beijing, China.").  The SEC's handful of emails and letters on company stationery from years ago are likewise insufficient to establish that mailing the Complaint to GIS is "reasonably calculated" to provide Mr. Gunn with notice of this action.  *See In re BRF S.A. Securities Litigation*, No. 18 Civ. 2213 (PKC), 2019 WL 257971, *7 (S.D.N.Y. Jan. 18, 2019) (denying motion to attempt service on defendants' alleged places of business where plaintiff did not "purport to have taken follow up steps to confirm that the information [regarding place of business] is accurate and up-to-date").  This is particularly the case in the ongoing SARS-CoV-2 pandemic, where company employees and officers frequently work remotely.

In fact, Mr. Gunn's actual place of business is Hong Kong.  (Gunn Decl., ¶ 9.)  Mr. Gunn has been working from either the office of Global Investment Strategy HK Ltd. (in Hong Kong)

or otherwise remotely since at least April 2019. (*Id.* ¶ 10.) As a result, mailing the Complaint to GIS's office in London was not adequate service under Rule 4(f)(2)(C)(ii), even if service via mail were generally sufficient under that Rule.

For these reasons, the SEC's attempt to serve Mr. Gunn was defective, and the Complaint should be dismissed as against him pursuant to Rule 12(b)(5).

## II. THE COURT LACKS PERSONAL JURISDICTION OVER MR. GUNN.

### A. Legal Standard.

On a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction over the defendants. *SEC v. Sharef*, 924 F. Supp. 2d 539, 543 (S.D.N.Y. 2013). In deciding a pretrial motion to dismiss for lack of personal jurisdiction, the Court has considerable procedural leeway. *See Krepps v. Reiner*, 588 F. Supp. 2d 471, 479 (S.D.N.Y. 2008) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). It may determine the motion on the basis of affidavits alone. *Id.* "The lawful exercise of personal jurisdiction by a federal court requires' procedurally proper service of process, a statutory basis for jurisdiction, and compliance with due process." *SEC v. PlexCorps*, No. 17 Civ. 7007 (CBA) (RML), 2018 WL 4299983, at * 7, 21 (E.D.N.Y. Aug. 8, 2018) (citing *Licci ex rel. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)).

In a securities case, personal jurisdiction is governed by Section 27 of the Exchange Act, 15 U.S.C. § 78aa, which is coterminous with the Due Process Clause of the Fifth Amendment. *Sharef*, 924 F. Supp. 2d at 544 (S.D.N.Y. 2013); *see also Das Rio Tinto PLC*, 332 F. Supp. 3d 786, 799 (S.D.N.Y. 2018) (the Exchange Act "permits the exercise of personal jurisdiction to the limit of the Due Process Clause"). Under the Due Process Clause, the defendant "must have certain minimum contacts with the forum such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *Sharef,* 924 F. Supp. 2d at 544 (citations omitted).

To establish minimum contacts sufficient to support personal jurisdiction, the SEC must show that Mr. Gunn "purposefully directed [his] activities towards the forum and the litigation arises out of or is related to" their contact with the forum.[6] *Sharef*, 924 F. Supp. 2d at 545 (quoting *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 466-67 (S.D.N.Y. 2008)). In addition, to "establish the minimum contacts necessary to satisfy due process with respect to a nonresident defendant, the plaintiff must show that … the defendant purposefully availed himself of the privilege of doing business in the forum and could foresee being haled into court there." *Rio Tinto PLC*, 332 F. Supp. 3d at 800.

The "defendant's suit-related conduct must create a substantial connection with" the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). In the securities context, the relevant forum for a minimum contacts analysis is the U.S. as a whole, but courts should proceed with "great care and reserve" when undertaking the analysis with respect to foreign defendants. *Sharef*, 924 F. Supp. 2d at 548. "'[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). Rather, defendants must have "followed a course of conduct directed at … the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011). In analyzing a defendant's affiliation with the forum, the court must focus on "contacts that the 'defendant *himself*' creates with the forum State, . . . not the convenience of

---

[6] Jurisdiction over "the representative of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state." *In re Alstom SA*, 406 F. Supp. 2d 346, 398 (S.D.N.Y. 2005) (citation omitted).

plaintiffs or third parties." *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

**B.    Mr. Gunn Lacks Minimum Contacts with the Forum.**

The SEC makes no specific allegation connecting Mr. Gunn to any activity in the U.S. and, therefore, has not established the minimum contacts necessary to exercise personal jurisdiction over Mr. Gunn.  Mr. Gunn is a U.K. non-resident citizen and Hong Kong resident. (Gunn Decl., ¶ 3.)  Like GIS, he is not registered to do business in the U.S., nor does he trade securities on behalf of any clients in the U.S.  (*Id*. ¶¶ 12, 18.)  Notably, the SEC does not allege that Mr. Gunn ever (i) received, handled, or routed orders for U.S. securities; (ii) negotiated the terms of any securities traded on a U.S. market; (iii) possessed any U.S. account; or (iv) that Mr. Gunn himself executed any securities transaction in the U.S.  While the SEC does allege that Mr. Gunn met with certain of GIS's customers in Manhattan, the SEC does not suggest what the content of those meetings were or whether they related in any way to any alleged U.S.-based activity of GIS (or any business at all for that matter).  (Compl., ¶ 23.)

The SEC also alleges that Mr. Gunn generally communicated with certain GIS customers about opening or closing accounts, (*id.* ¶ 24), but again does not provide any other details that would support the exercise of personal jurisdiction.  The SEC also makes no effort to distinguish which of Mr. Gunn's customer activities involved U.S. customers, and those that did not involve U.S. customers.  The SEC's lack of specificity regarding Mr. Gunn's customer activities is not sufficient to sustain personal jurisdiction over him.  Moreover, even assuming Mr. Gunn's alleged activities related to only U.S. customers, the SEC's allegations are not based on the mere onboarding of customers or the opening or closing of accounts, and these alleged contacts would, therefore, be insufficient to support personal jurisdiction over Mr. Gunn.  *See Walden*, 571 U.S.

at 284 (the "defendant's *suit-related conduct* must create a substantial connection with" the forum) (emphasis added).

Additionally, the Supreme Court has held that personal jurisdiction must be based on the defendant's own contact with the forum, and that the existence of personal jurisdiction over a corporation does not convey jurisdiction over the corporation's officers or employees. *See Shaffer v. Heitner*, 433 U.S. 186, 213-16 (1977); *see also Rio Tinto PLC*, 332 F. Supp. 3d at 802 ("A person's status as a board member is not alone sufficient to establish jurisdiction."). The plaintiff must establish sufficient personal contacts by each defendant to maintain jurisdiction over them personally. *See, e.g.*, *Reynolds Corp. v. Nat'l Operator Servs.*, *Inc.*, 73 F. Supp. 2d 299, 303 (W.D.N.Y. 1999) ("[J]ust because the corporation is subject to jurisdiction does not, *ipso facto*, subject every corporate officer to personal jurisdiction").

Here, the SEC conflates and equates all of GIS's business dealings with Mr. Gunn's activities as chairman and compliance officer. (*See* Compl., ¶ 23.) The SEC fails to suggest how Mr. Gunn's alleged "onboarding [of] new customers, opening and closing accounts, and resolving trading and leverage issues" constitute the effecting of a transaction on a domestic exchange, or concern the passing of title of a security in the U.S.[7] *See SEC v. Alexander*, 160 F. Supp. 2d 642, 657 (S.D.N.Y. 2001) (dismissing claims against a foreign defendant for lack of personal jurisdiction because it was unlikely that the defendant's acts presented "unmistakably foreseeable effects within the United States" that could "reasonably be expected to be visited upon United States shareholders."). Similarly, Mr. Gunn's alleged issuance of "comfort letters"

---

[7] The SEC's most specific allegation regarding Mr. Gunn is that, on one occasion, he "used GIS's capital to address a margin call in a backer's omnibus account at GIS and sold securities from a backer's account for the same purpose." (Compl., ¶ 26.) But, even here, the SEC does not specify if this transaction involves a U.S. customer, U.S. security, U.S. account, or U.S. exchange, or, equally importantly, whether Mr. Gunn took any personal action in the U.S.

in his capacity as GIS's compliance officer (Compl., ¶ 25) is insufficient to establish personal jurisdiction. *See Henry Haining Zhang v. Kon Ki Lo*, No. 14 Civ. 6945 (CM), 2020 WL 2133163, at *12 (S.D.N.Y. May 5, 2020) (citation omitted) ("Jurisdiction over a corporation's board member, officer or employee, in his or her individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his or her corporate capacity."); *Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 636 (S.D.N.Y. 2008) (holding German-based CEO's issuance of letter in official capacity to New York shareholders insufficient to confer personal jurisdiction over CEO in individual capacity).

Because the SEC has failed to allege sufficient minimum contacts between Mr. Gunn and the U.S., the Complaint should be dismissed as to Mr. Gunn pursuant to Rule 12(b)(2).

## III.    THE COMPLAINT FAILS TO STATE CLAIMS FOR RELIEF.

### A.    Legal Standard.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Rather, the court is required to determine whether, accepting the facts alleged by the plaintiff as true, "the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015). "A claim has facial plausibility [rather than mere conceivability] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated

in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 171 (S.D.N.Y. 2010) (quoting *Iqbal,* 556 U.S. at 678-79). And, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Att. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"—"that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

**B.     Providing Credit or Margin Is Not a Broker-Dealer Activity and Cannot Serve as a Basis for a Violation of Section 15(a).**

The SEC's theory of liability for both counts against GIS and Mr. Gunn—both non-U.S. domiciled defendants—is based largely on the premise that GIS acted as an unregistered U.S. broker by effecting and inducing securities transactions for U.S. customers by providing those U.S. customers with greater credit than they could otherwise obtain from U.S. registered broker dealers. (Compl., ¶ 20.)  As a threshold matter, the act of extending credit (or providing margin) for the purpose of purchasing and carrying securities is not a broker-dealer activity and therefore cannot serve as a basis for a violation of Section 15(a).  Stated differently, the conduct of extending credit is not "effecting" a securities transaction or attempting to "induce" a securities

transaction.  U.S. law plainly states that entities other than broker-dealers, including foreign persons, may extend credit to U.S. persons secured by securities and cash collateral, including extensions of credit *for the purpose of purchasing securities* (*e.g.*, initial margin).  *See*, *e.g.*, 12 C.F.R. § 221.1.  These lending activities are highly regulated and expressly governed by regulations adopted by the Board of Governors of the Federal Reserve Board ("FRB") and *not* the SEC.  The FRB's authority over these activities is codified at Section 7 of the Exchange Act, which states that "[f]or the purpose of preventing the excessive use of credit for the purchase or carrying of securities, the Board of Governors of the Federal Reserve System shall … prescribe rules and regulations with respect to the amount of credit that may be initially extended and subsequently maintained on any security (other than an exempted security …)."  15 U.S.C. § 78g.  This language plainly empowers the FRB and *not* the SEC with authority to establish regulations governing extensions of credit secured by securities, including initial extensions of credit.  Notably, the FRB has specifically *not* prohibited non-broker dealers from extending credit for the purpose of purchasing or carrying securities, but, rather, has adopted extensive regulations expressly permitting a wide variety of entities to engage in those activities.[8]

Accordingly, GIS's act of financing securities purchases for a fee, which includes holding customer cash and securities as collateral, cannot itself be considered brokerage activity and any such view would contradict the Exchange Act and FRB regulations.

---

[8] These regulations include Regulations T, U, and X.

C.     **The SEC Fails to Allege the Necessary Domestic Nexus for the Transactions at Issue.**[9]

Even if GIS's activities did include effecting and inducing securities transactions, which it did not, the Complaint does not adequately allege that either GIS or Mr. Gunn effected or induced *domestic* securities transactions.  Because Section 15 of the Exchange Act has limited extraterritorial application, the statute does not reach, and the Complaint cannot plausibly capture, GIS's non-domestic activities.

"It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."  *In re Petrobras Sec. Litig.*, 862 F.3d 250, 262 (2d Cir. 2017) (quoting *Morrison*, 561 U.S. at 255).  Prior to the U.S. Supreme Court's decision in *Morrison*, U.S. courts held that the U.S. securities laws could be applied extraterritorially if "the wrongful conduct had a substantial effect in the United States or upon United States citizens," or if "the wrongful conduct had a substantial effect in the United States or upon United States Citizens."  *Morrison*, 561 U.S. at 257 (quoting *SEC v. Berger*, 322 F.3d 187, 192-93 (2d Cir. 2003)).  In *Morrison*, however, the Supreme Court rejected this "conduct or effects" test, ruling that the U.S. securities laws apply to violative *transactions*, and, further, that the securities laws apply only to *domestic* transactions.[10]

---

[9] *Morrison* disposed of Second Circuit caselaw holding that "the extraterritorial reach of [the Exchange Act raises] a question of subject-matter jurisdiction."  561 U.S. at 253-54; *see also SEC v. Scoville*, 913 F.3d 1204, 1217 (10th Cir. 2019) ("In *Morrison*, the Supreme Court . . . first held, contrary to decades of circuit-level authority, that the question of whether federal securities laws applied extraterritorially was not a matter of subject-matter jurisdiction, but instead went to the merits of the claim.").  Therefore, here, as in *Morrison*, the issue of the extraterritorial application of the Exchange Act should be analyzed via Fed. R. Civ. P. 12(b)(6), not 12(b)(1).  *See Morrison*, 561 U.S. at 255 ("we proceed to address whether petitioners' allegations state a claim.").

[10] Section 929P(b) of Dodd-Frank added language to Section 27 of the Exchange Act, which governs jurisdiction, clarifying that the "district court of the United States . . . shall have jurisdiction of an action … instituted by the Commission. . . alleging a violation *of the antifraud provisions* of this chapter" if the conduct and effects test has been satisfied.  Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 929P(b), 124 Stat. 1376, 1864-65 (2010) (emphasis added); *see also* 15 U.S.C. § 78aa(b).  Therefore, notwithstanding the Supreme Court's holding in *Morrison*, the Second Circuit's conduct and effects test may have been reinstituted for antifraud cases (*i.e.*, Section 10(b) cases), but *not* for non-fraud cases like the case here.  *See, e.g.*, *SEC v. Tourre*, No. 10 Civ. 3229 (KBF), 2013 WL 2407171, at *1 n.4 (S.D.N.Y. June 4, 2013).

*Morrison*, 561 U.S. at 266-67; *Cornwell v. Credit Suisse Grp.*, 729 F. Supp. 2d 620, 622 (S.D.N.Y. 2010) (the Supreme Court "roundly (and derisively) buried the venerable 'conduct or effect' test the Second Circuit devised and for years had employed to determine whether the protections and remedies contained in § 10(b) of the Exchange Act apply extraterritorially.").

Specifically, the Supreme Court held that the reach of U.S. securities law is presumptively limited to (1) "transactions in securities listed on domestic exchanges," and (2) "domestic transactions in other securities." *Morrison*, 561 U.S. at 267. Conversely, the Exchange Act "would not apply to transactions involving (1) a purchase or sale, wherever it occurs, of securities listed only on a foreign exchange, or (2) a purchase or sale of securities, foreign or domestic, which occurs outside the United States." *Cornwell*, 729 F. Supp. 2d at 624-25.

Though *Morrison* dealt with Section 10(b) of the Exchange Act, courts have applied its holding to Section 15(a) of the same Act.[11] *See United States v. Benger*, 934 F. Supp. 2d 1008, 1011 (N.D. Ill. 2013) ("[T]he regulatory purpose of Section 15(a) is 'virtually the same' as that of Section 10(b), [so] registration is only required where a broker or dealer is engaged in or induces others to engage in a domestic transaction."); *SEC v. Battoo*, 158 F. Supp. 3d 676, 694 n.14 (N.D. Ill. 2016) ("*Morrison* also applies to Section 15 of the Exchange Act"); *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147, 164 (S.D.N.Y. 2011) (applying *Morrison* outside of the Section 10(b) context). In *SEC v. Benger*, that district court addressed a *Morrison* challenge

---

[11] Courts have identified several reasons for giving antifraud provisions of the securities laws broader extraterritorial reach than American filing requirements. *See Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 262 (2d Cir. 1989). Section 15(a)'s extraterritorial reach should accordingly be more restrained than the Section 10(b) provision of the Act at issue in *Morrison*. *See E.ON AG v. Acciona, S.A.*, 468 F. Supp. 2d 559, 573 (S.D.N.Y. 2007) ("'the problem of conflict between our laws and that of a foreign government is much less when the issue is the enforcement of the anti-fraud sections of the securities laws than with such provisions as those requiring registration of persons or securities.' *ITT v. Cornfeld*, 619 F.2d 909, 921 (2d Cir. 1980).").

to an SEC enforcement action under Section 15(a) involving both U.S. and non-U.S. brokers.

934 F. Supp. 2d at 1008. The SEC argued that, unlike Section 10(b), "Section 15 focuses on the 'registration and regulation of brokers' and thus does not implicate *Morrison*." *Id.* at 1011. But the court ultimately sided with the foreign defendants and held, in light of *Morrison*, a broker is not required to register with the SEC where the securities transaction is foreign and, therefore, beyond the scope of the Exchange Act. *Id.* at 1013.

When determining whether securities transactions are domestic, and thus within the scope of the Exchange Act, courts look to the location of where the securities transaction occurred.[12] *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 180 n.22 (2d Cir. 2014). The "mere *listing* on a domestic exchange is not sufficient to establish domesticity if the relevant securities transaction did not occur on a domestic exchange." *In re Petrobas Sec. Litig.*, 862 F.3d at 262 (emphasis in original) (citing *City of Pontiac*, 752 F.3d at 180-81). Instead, what matters is "the location of the securities *transaction* and not the location of an exchange where the security may be dually listed." *City of Pontiac*, 752 F.3d at 1801.

"[F]or securities that are not traded on a domestic exchange," a transaction is considered domestic, if "either (1) the purchaser must have 'incurred irrevocable liability within the United States to take and pay for a security, or the seller must have incurred irrevocable liability within the United States to deliver a security,' or (2) legal title to the security must have transferred in the United States." *In re Petrobras Sec.*, 862 F.3d at 262 (quoting *Absolute Activist*, 677 F.3d at 67). In making this determination, courts are directed to look at "facts concerning the formation

<hr>

[12] SEC states that jurisdiction is present because the "Defendants . . . have made use of the means or instrumentalities of interstate commerce…." (Compl., ¶ 8.) Yet "[t]he general reference to foreign commerce in the definition of 'interstate commerce' does not defeat the presumption against extraterritoriality." *Morrison*, 561 U.S. at 263. To the contrary, it reveals that the SEC has not considered the impact of *Morrison* on this matter and the significant hurdles to extraterritorial exercise of jurisdiction over non-fraud claims under the Exchange Act.

of contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 70 (2d Cir. 2012); *see also Plumbers' Union Local No. 12*, 753 F. Supp. 2d at 177 (holding that a purchase of a security is "domestic" if the purchaser "incur[s] an irrevocable liability to take and pay for the stock" in the United States). On the other hand, the Second Circuit has held that the identity of the securities, the identity of the buyer or seller, and the residency or citizenship of the buyer or seller are no longer relevant to the determination of whether a transaction is domestic. *Absolute Activist*, 677 F.3d at 70 ("we cannot conclude that the identity of the security necessarily has any bearing on whether a purchase or sale is domestic within the meaning of *Morrison*."); *see also In re Petrobras Sec.*, 862 F.3d at 262 ("the location or residency of the buyer, seller, or broker will not necessarily establish the situs of the transaction").

Under these principles, the SEC's action against GIS and Mr. Gunn fails. The SEC generally alleges that GIS's activities, which were for the purpose of extending credit to U.S. customers, also included "providing clearing and settlement services" and "soliciting customers for its brokerage services." (Compl., ¶ 12.) The SEC has not alleged, however, that any transaction involving GIS was "effected" on a domestic exchange, and the Complaint also fails to contain sufficient facts establishing GIS's inducement (or attempted inducement) of any domestic transaction. At most, the SEC alleges the strategy of GIS's *customers* was to "acquire allocations of securities issued by U.S. companies and governmental agencies, among other issuers, using delivery-versus-payment ("DVP") accounts at U.S. introducing broker-dealers." (Compl., ¶ 14.) Notably, the SEC does *not* allege (nor can it) that GIS received the orders for these securities transactions, negotiated the terms of these securities transactions, or executed these securities transactions. The SEC does not even allege that GIS was aware of the existence

of these securities transactions until after the trade had already been executed using U.S. registered broker-dealers. Thus, in the context of *Morrison*, the Complaint fails to allege that any transaction effected or induced by GIS occurred in the U.S. *See Loginovskaya v. Batratchenko*, 936 F. Supp. 2d 357, 366-67 (S.D.N.Y. 2013) ("a plaintiff must allege facts suggesting that irrevocable liability was incurred or title was transferred within the" U.S. and "mere assertions that the transactions 'took place in the [U.S.] are insufficient to adequately plead the existence of domestic transactions."), *aff'd*, 764 F.3d 266 (2d Cir. 2014).

And while the SEC alleges that the U.S. traders instructed their U.S. registered broker dealers "to clear and settle their trades at GIS", (Compl., ¶ 14), the SEC also concedes that GIS did not actually perform any clearing and settlement services. To the contrary, these services were effectuated by a different U.K. firm separate and apart from GIS. (Compl., ¶ 15.) "GIS maintained an omnibus account at a U.K. custodial firm which received the traders' securities electronically, and the trades settled in GIS's account *at the UK custodial firm*." (*Id.* emphasis added.) Unsurprisingly, the SEC does not allege how GIS's "clearing and settling" transactions took place in the U.S. or otherwise identify any securities transactions GIS effected or induced in the U.S. Specifically, the SEC does not allege whether GIS's alleged "clearing and settling" involved GIS incurring irrevocable liability of a security within the U.S. or whether GIS's alleged transactions included the transfer of the legal title of a security in the U.S. *See Absolute Activist*, 677 F.3d at 70 (in the complaint, "there are only a few allegations that mention or even hint at the location of the securities transactions at issue in this case"). In fact, according to the SEC, GIS was merely "*holding* customer funds and securities" *in the U.K.*[13] (Compl. ¶¶ 2, 15

---

[13] With respect to the passing of title, "a 'sale' is ordinarily defined as 'the transfer of property or title for a price.'" *Absolute Activist*, 677 F.3d at 68.

emphasis added.)  Thus, according to the Complaint, it appears all transactions involving GIS occurred exclusively in the U.K.

The Second Circuit's reasoning in *City of Pontiac* instructive.  There, the Court held that "the mere placement of a buy order in the United States for the purchase of foreign securities on a foreign exchange" was insufficient for the plaintiffs to have incurred irrevocable liability in the United States.  752 F.3d at 181.  The Court's decision hinged on the fact that, although the order was placed in the United States, it was "then *executed* on a foreign exchange." *Id.* (emphasis added).  The Second Circuit held that this removed the transaction from the scope of the Exchange Act because the Supreme Court in *Morrison* had explained that the Exchange Act was not intended to regulate foreign exchanges.  *Id*.  Similarly, here, GIS was *not* the actor placing or executing any order for any security on a domestic exchange.

Although the SEC has identified transactions involving U.S. securities executed by U.S. registered broker-dealers to which GIS was not a party, it is important to identify the domestic activities the SEC *does not* allege in its Complaint:  the SEC does not allege that GIS received, induced, placed, executed, handled, advised on, or routed orders for U.S. securities; that it negotiated the terms of any securities traded on a domestic market or exchange; that it had authority over the U.S. accounts of its customers; or that GIS itself executed any securities transaction in the U.S.  The SEC does not allege that GIS was a member of a U.S. securities exchange, solicited trading interest in an issuer, recommended a new security, or otherwise attempted to bring together a buyer and seller of a security with respect to any domestic transaction.

Additionally, the SEC does not adequately allege that GIS or Mr. Gunn solicited customers.  To the contrary, if GIS's activities were brokerage activities (which they were not),

GIS qualifies for safe harbor protection under Rule 15a-6,[14] 17 C.F.R. § 240.15a-6, which states

that a "foreign broker or dealer shall be exempt from the registration requirements of sections

15(a)(1) or 15B(a)(1) of the Act to the extent that the foreign broker or dealer . . . [e]ffects

transactions in securities with or for persons *that have not been solicited by the foreign broker or*

*dealer*." 17 C.F.R. § 240.15a-6 (emphasis added). The SEC alleges that GIS's website

"solicited customers by promoting its global multi-asset trade execution, clearing, safe custody

and stock lending solutions to a combination of financial institutions, fund managers, and wealth

officers." (Compl., ¶ 22.) But merely having a website advertising the firm's services cannot

legally amount to the "solicit[ation of U.S.] customers."[15] If so, then any foreign broker would

subject itself to Section 15's authority merely by having an online presence or by advertising its

services on a website. In light of *Morrison*'s constraints, caselaw in this district requiring the

*active*, rather than mere passive, solicitation of U.S. investors is a far more suitable standard to

apply here, and one that would not be overinclusive in its reach. *See generally Hansen*, 1984

WL 2413. And, without an allegation of GIS's active solicitation of U.S. customers manifest in

the Complaint, the SEC has failed to state a claim for relief.

"[T]he 'primary purpose' . . . of Section 15(a)'s registration requirement was to regulate

those brokers and dealers utilizing American exchange facilities." *Benger*, 934 F. Supp. 2d at

---

[14] Rule 15a-6, adopted in 1989, is a pre-*Morrison* rule that still contains the later-eschewed conduct and effects test for determining extraterritoriality. This court should, therefore, view its test skeptically in this non-fraud case. *See generally* Arthur B. Laby, *Symposium: Revolution in the Regulation of Finance Advice: The U.S., the U.K. and Australia: International Issues in the Regulation of Financial Advice: Regulation of Global Financial Firms After Morrison v. National Australia Bank*, 87 ST. JOHN'S L. REV. 561, 582 (2013) ( "The regulation of foreign broker-dealers, embodied in Exchange Act Rule 15a-6, depends on a presumption of extraterritorial application of the statute abrogated by *Morrison*.").

[15] Typically, solicitation requires the "active rather than passive find[ing] of investors." *SEC v. Hansen*, No. 83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984) (listing a non-exclusive list of factors to determine whether one "effects transactions" and thus qualifies as a broker); *see also In re Kemprowski & the Cambridge Consulting Co.*, Exchange Act Release No. 34-35058, 1994 WL 684628, at *2 (Dec. 8, 1994) (listing the *active* solicitation of investors as a factor in determining whether a person has acted as a broker).

1014. Lending money in the U.K. to U.S. traders, holding the customers' securities in a U.K. omnibus account as collateral for those loans, and charging fees in the U.K. for those services simply does not constitute the inducement of a "purchase or sale of any security in the United States." *See Cornwell*, 729 F. Supp. at 623. The SEC's Complaint thus fails to plausibly allege that GIS utilized American exchange facilities and fails to allege facts leading to the inference of a domestic transaction. Accordingly, the SEC's Complaint must be dismissed.

    **D.    The SEC Failed to Plead the Requisite Scienter to Establish Liability for Mr. Gunn under Section 20(e) of the Exchange Act.**

The SEC has not properly pled scienter to allege a violation of Section 20(e) on behalf of Mr. Gunn. Though the SEC does not need to prove "scienter to establish a violation of Section 15(a)," *SEC v. Martino*, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003), when pleading a violation by way of Section 20(e), the SEC must allege facts that show "(1) a primary violation of the Exchange Act, (2) actual knowledge of the violation by the aider and abettor, and (3) that the aider and abettor substantially assisted the primary violation." *SEC v. Espuelas*, 579 F. Supp. 2d 461, 471 (S.D.N.Y. 2008) (citing *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334 (S.D.N.Y. 2006)); *accord SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 362 (D.N.J. 2009) ("Congress intended to require actual acknowledge as the scienter standard for aiding and abetting liability"); *Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003) (aider and abettor liability requires "knowledge of the primary violation and [the aider and abettor's] own role in furthering it"). "The three requirements cannot be considered in isolation from one another." *SEC v. DiBella*, 587 F.3d 553, 566 (2d Cir. 2009) (quoting *Cornfeld*, 619 F.2d at 922). To sufficiently allege the "substantial assistance" element, the SEC must allege that the aider and abettor "in some sort associate[d] himself with the venture, that he participate[d] in it as something that he

wishe[d] to bring about, [and] that he [sought] by his action to make it succeed." *SEC v. DiMaria*, 207 F. Supp. 3d 343, 359 (S.D.N.Y. 2016) (citations omitted).

Assuming *arguendo* the SEC can demonstrate the existence of an underlying Section 15(a) violation on the part of GIS, it has not adequately pled actual knowledge of any violation by Mr. Gunn. At most, the SEC has offered a "threadbare recital[]," *see Iqbal*, 556 U.S. at 663, that Mr. Gunn "knowingly" provided substantial assistance to GIS's alleged violations. (*See* Compl., ¶ 31.) On the face of the Complaint, the SEC has provided no support whatsoever demonstrating Mr. Gunn's knowledge that GIS's financing activities for U.S. customers amounted to those of a broker, let alone a broker engaged in domestic transactions requiring registration in the U.S. And although in four brief paragraphs the SEC lists Mr. Gunn's responsibilities as the chairman and founder of GIS—onboarding new customers, opening and closing accounts, resolving trading and leverage issues, assisting day traders in setting up accounts, and communicating with GIS customers, (*see* Compl., ¶¶ 23-26)—the SEC nonetheless fails to articulate how any of these activities show Mr. Gunn actually knew GIS was violating Section 15(a) of the Exchange Act.

At bottom, the SEC's sole allegation in support of Mr. Gunn's alleged knowledge is that he "knowingly provided substantial assistance to the violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), by defendant GIS."[16] (Compl., ¶ 31.) But, that is not a factual allegation, and "'naked assertions' or 'a formulaic recitation of the elements of a cause of action' does not suffice." *Sara Designs, Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548, 553 (S.D.N.Y. 2017) (quoting *Twombly*, 550 U.S. at 555). The Complaint against Mr. Gunn should accordingly be dismissed.

---

[16] The SEC did not allege that Mr. Gunn "recklessly" provided substantial assistance, an option the statute permits. *See* 15 U.S.C. § 78t(e) ("any person that knowingly or recklessly provides substantial assistance").

**CONCLUSION**

For the foregoing reasons, Defendants Global Investment Strategy U.K. Limited and John William Gunn respectfully request that this Court dismiss the Complaint with prejudice.

DATED: April 2, 2021

Respectfully submitted,

**DLA PIPER LLP (US)**

By: _s/ Caryn Schechtman_

Caryn Schechtman
Thomas Alford
Joshua Kane
1251 Avenue of the Americas
New York, NY 10020
Tel: 212-335-4500
caryn.schechtman@us.dlapiper.com
thomas.alford@us.dlapiper.com
joshua.kane@us.dlapiper.com

_Counsel for Defendants_
_Global Investment Strategy UK Ltd. and_
_John William Gunn_